UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALLEN ATKINS,

          Plaintiff,

v.

UNKNOWN SAVOIE et al.,

          Defendants.
_____/

Case No. 2:22-cv-203

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 8.) Plaintiff has also filed a motion to appoint a process server for purposes of serving Plaintiff's complaint on Defendants. (ECF No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint a process server (ECF No. 7).

## Discussion

### I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County. (Compl., ECF No. 1, PageID.1.) Plaintiff sues URF Warden Connie Horton, "Acting Warden" James Corrigan, and Correctional Officers Unknown Savoie, Unknown Rau, Unknown Bernard, Unknown Anderson, Unknown Livermore, Unknown Ware, Unknown Mills, Unknown Ferrero, Unknown Conner, Unknown Marble, Unknown Blair, Unknown Haase, Unknown Riggs, Unknown Cook, Unknown Vansloten, Unknown Storey, J. Hill, G. Lipponen, Unknown Officer #1, Unknown Officer #2, and Unknown "Ms." Locke. All Defendants are sued in their individual capacities.

Plaintiff's claims arise out of two separate periods of incarceration at URF. (ECF No. 1, PageID.3.). Plaintiff was incarcerated at URF from January 2018 to March 2018, and again from August 29, 2020, through September 1, 2022. (*Id.*) While at URF, Plaintiff alleges that he was housed in the segregation "Steamboat Unit" on four occasions: first, in January 2018; second, from August 29, 2020, until sometime in September 2020; third, from March 21, 2022, until April 13, 2022; and fourth, from July 13, 2022, to September 1, 2022. (*Id.*, PageID.5, 6.) While in the Steamboat Unit, Plaintiff was unable to get more than four hours of uninterrupted sleep "due to all unit officers, medical staff, [and] mental health staff engaging [in] security rounds, count rounds, etc.," which caused a loud noise every "5, 10, 20 minutes . . . ." (*Id.*, PageID.5.) Plaintiff wrote to Defendants Horton and Corrigan and MDOC Director Heidi E. Washington (not a party) regarding

Plaintiff's "sleep deprivation;" however, they did not respond. (*Id.*) In connection with Plaintiff's 2020 (second) stay in the Steamboat Unit, Plaintiff "mailed a grievance form to Defendant Horton," but Defendant Horton did not respond. (*Id.*, PageID.5–6.)

From September 2020 to March 31, 2022 (excluding Plaintiff's time spent in the Steamboat Unit), Plaintiff was housed in URF's general population "Marquette Unit." (*Id.*, PageID.6.) Plaintiff separately claims that he was unable to get more than four hours of uninterrupted sleep because of different noises by shift officers in the Marquette Unit, including "loud music, loud talking, loud movies, yelling while drunk, 'party like atmosphere', loud computer videos, and repeatedly shining extremely bright fluorescent flashlights directly in Prisoner's/Plaintiff's face and eyes. . . ." (*Id.* (emphasis omitted).) Plaintiff alleges that all 21 Defendant Corrections Officers were generally assigned to work third shift in the Marquette Unit but does not attribute specific conduct to any individual Defendant.

Plaintiff claims that he made "written requests to Defendants Horton and Corrigan to be relocated to another housing unit," but that these requests were ignored. (*Id.*, PageID.7.) In his July 2021 grievance, Plaintiff explained that "four unknown correctional officers" had been playing loud music videos and having loud conversations during sleeping hours since September 2020, preventing Plaintiff from getting more than three hours of uninterrupted sleep. (ECF. No. 1-1, PageID.14.) Plaintiff indicated that he had approached these officers on "multiple times" including on July 8, 2021, to discuss the issue. (*Id.*) Plaintiff also explained: "[s]ince September 2020[, Plaintiff] kited Warden Connie Horton (no response)." (*Id.*) Plaintiff did not describe the contents of his earlier requests to Defendant Horton.

Finally, Plaintiff claims that he requested that URF medical personnel (not parties) prescribe Plaintiff sleeping pills for his sleep deprivation. (ECF No. 1, PageID.8.) When they

3

refused, Plaintiff submitted written requests to Defendants Horton and Corrigan, asking that Defendants Horton and Corrigan "order Bethany Stain (HUM) [(not a party)] and URF medical doctors to prescribe Plaintiff a sleeping pill prescription for sleep deprivation. . ." (*Id.*) Defendants Horton and Corrigan did not respond. (*Id.*)

Plaintiff seeks nominal, punitive and compensatory damages of eleven billion dollars, as well as costs and attorney fees. (*Id.*, PageID.9.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff alleges that Defendants each violated Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment. (ECF No. 1, PageID.8.)

### A.     Claims Related to 2018 Incarceration

Plaintiff alleges that he first experienced excessive noise in violation of his Eighth Amendment rights while housed in the URF Steamboat Unit in January 2018. (ECF No. 1, PageID.3.) Plaintiff was transferred from URF to a new facility for the first time in March 2018. (*Id.*, PageID.5.) Without addressing the merits of Plaintiff's 2018 claims, any claims premised upon events during this period are barred by the three-year statute of limitations.

For purposes of claims asserted under 42 U.S.C. § 1983, state statutes of limitations and tolling principles apply. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). This means that, for civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Under federal law, the statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that

5

is the basis of his action. *Collyer*, 98 F.3d at 220.[1] "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007).

Here, Plaintiff asserts that, during his 2018 incarceration, Plaintiff was subjected to excessive noise and deprived of "uninterrupted sleep." He therefore had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued in 2018. However, Plaintiff did not file this complaint until October of 2022, well past Michigan's three-year limit. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). And it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). Furthermore, even assuming that it took Plaintiff one year to exhaust his administrative remedies for this claim, tolling the limitations period during this time, Plaintiff's claims regarding events from January 2018 through March 2018 would remain untimely. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Accordingly, any claims arising out of Plaintiff's 2018 incarceration at URF are untimely.

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (discussing that when a complaint on its face is barred by the statute of limitations, it fails to state a claim). The Court will therefore dismiss, for failure to state a claim, all claims arising out of Plaintiff's 2018 incarceration at URF.

**B.     Eighth Amendment – Noise Complaints**

Plaintiff alleges that he experienced excessive noise while housed in both the Steamboat and Marquette Units at URF from August 29, 2020, through September 1, 2022 in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.8.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

7

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### 1. Steamboat Unit Security Counts

As to Plaintiff's time in the Steamboat Unit, Plaintiff alleges that prison officials were required to conduct inmate counts pursuant to MDOC Policy Directive 04.04.101. (ECF No. 1, PageID.5.) Plaintiff claims that unit officers, medical staff, and mental health staff did this by striking an electronic metal bar against an electronic metal object attached to each cell door "every

8

5, 10, 20 minutes" throughout the day, producing an "extremely loud bang and beeping noise . . . ." (ECF No. 1, PageID.5.)

"There is no doubt that '[e]xcessive noise in a prison can state a valid Eighth Amendment claim.'" *Kimball v. Bureau of Prisons*, No. 4:13CV225, 2013 WL 3098900, at *8 (N.D. Ohio June 19, 2013) (quoting *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995)). However, "high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley,* 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted).

On an objective level, cases finding an Eighth Amendment violation based on excessive noise have typically "involved incessant noise throughout the day and night, *which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss*." *Kimball*, 2013 WL 3098900, at *8 (emphasis added) (citing *Sterling v. Smith*, No. CV606–103, 2007 WL 781274, at *3 (S.D. Ga. Mar.8, 2007); *Antonelli v. Sheehan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy,* 597 F. Supp. 1388, 1410 (N.D. Cal.1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)). Although Plaintiff alleges that he was not able to get four hours of uninterrupted sleep each time that Plaintiff was in the Steamboat Unit, Plaintiff does not allege that the banging on the cell doors during security counts was so excessive or pervasive as to pose an objectively serious risk of hearing loss or pain. Other than Plaintiff's own conclusion that the banging and beeping noises were "extremely loud," Plaintiff alleges no facts that would demonstrate that the noise levels were objectively "intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. Indeed, noise caused by banging on cell doors—particularly where, as here, it is done in relation to inmate security—is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *Kimball*, 2013 WL 3098900, at *8 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Yet even assuming, without deciding, that Plaintiff could demonstrate an objective deprivation, the inquiry does not end there. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. Plaintiff must still plead facts to plausibly suggest that Defendants acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

In the body of Plaintiff's complaint, Plaintiff names as Defendants only Warden Horton and Acting Warden Corrigan with respect to his claims regarding the noise in the Steamboat Unit. Plaintiff alleges that Defendants Horton and Corrigan failed to respond to Plaintiff's written inquiries regarding his "'sleep deprivation' caused by the (MDOC/URF) count procedure . . . ." (*Id.*) Plaintiff does not describe the nature of his written inquiries. Plaintiff also claims that he submitted a grievance to Defendant Horton; however, he does not elaborate as to its content. (*Id.*) Plaintiff claims that Defendant Horton "never responded." (*Id.*)

Government officials, such as Defendants Horton and Corrigan, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff complains of the way in which unidentified prison officials in the Steamboat Unit conducted their security rounds, and claims that he was separately told that the prison count procedure was conducted per MDOC policy (ECF No. 1, PageID.5); however, Plaintiff provides no facts to suggest that the "extremely loud" noise—if objectively unreasonable—was inherent in the procedure itself. Therefore, Plaintiff's allegations do not show that the policy, which Defendants Horton and Corrigan allegedly implemented, could have been itself the "moving force" behind a violation of Plaintiff's Eighth Amendment rights. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

11

Plaintiff's allegations also fail to show that Defendants Horton and Corrigan knew that the manner in which unidentified prison staff were implementing the security count policy would have amounted to a violation of Plaintiff's constitutional rights. Plaintiff indicates that he submitted written inquiries to Defendants regarding "sleep deprivation," and that he later submitted a grievance to Defendant Horton; however, Plaintiff does not elaborate as to the content of his inquiries or grievance. He has not pleaded facts sufficient to demonstrate approval or acquiescence on the part of Defendants Horton and Corrigan as to the specific and allegedly unconstitutional activities.

Ultimately, Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants Horton or Corrigan, in continuing to require inmate security checks within the segregation unit generally, were engaged in an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d at 954. There is nothing to indicate these Defendants knew of but consciously disregarded a serious risk to Plaintiff's health or safety, or that the risk was excessive given the purpose of maintaining inmate safety, as alleged by Plaintiff. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendants Horton and Corrigan premised upon the noise within the Steamboat Unit.

    2.    **Marquette Unit Officer Noise**

Plaintiff claims that, while housed in the Marquette Unit from September 2020 through September 1, 2022, Plaintiff was again subjected to "nightly loud and excessive noise" by shift officers, as well as "extremely bright fluorescent flashlights." (ECF No. 1, PageID.6.) Plaintiff alleges that he made "written requests to Defendants Horton and Corrigan to be relocated to another housing unit," but that those requests were ignored. (*Id.*, PageID.7.) Plaintiff does not describe the nature of his requests or what was communicated to Defendants. Plaintiff's July 2021 grievance, reviewed by Defendant Horton, explained only that "four unknown correctional

12

officers" had been playing loud music videos and having loud conversations during sleeping hours since September 2020, preventing Plaintiff from getting more than three hours of uninterrupted sleep. (ECF. No. 1-1, PageID.14.). Plaintiff names as Defendants all 21 Corrections Officers generally assigned to work third shift in the Marquette Unit, as well as Defendants Horton and Corrigan.

### a. Defendant Corrections Officers

Naming as Defendants all 21 officers who worked the third shift in the URF Marquette Unit, Plaintiff describes a series of behaviors by "Marquette Unit 10-6 shift officers," which presumably took place over the course of Plaintiff's stay from September 2020 through March 31, 2022. (ECF No. 1, PageID.6–7.) However, in his grievance, Plaintiff acknowledges that the noise that he describes as unreasonable was caused by "four unknown named correctional officers" with whom Plaintiff spoke "multiple times prior to 07/08/2021 . . . ." (ECF. No. 1-1, PageID.14.) Plaintiff does not tie any individual Defendant to any specific conduct described in Plaintiff's complaint. Simply put, Plaintiff does not actually name any individual Defendant with respect to his claims regarding the noise in the Marquette Unit. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011))).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how

13

any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff's claims against the 21 Defendant Correctional Officers—officers that Plaintiff presumably encountered on multiple occasions when they worked on Plaintiff's unit—fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, the Court will dismiss Plaintiff claims against them.

### b. Defendants Horton and Corrigan

As to Plaintiff's claims against Defendants Horton and Corrigan, Plaintiff again fails to allege sufficient facts to demonstrate that Defendants Horton and Corrigan encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in any violation of Plaintiff's Eighth Amendment rights.

Plaintiff first alleges that his "written requests to Defendants Horton and Corrigan to be relocated to another housing unit[] were ignored." (ECF No. 1, PageID.7.) This, alone, fails to demonstrate any knowledge of any constitutional violation as to excessive noise and certainly no approval or acquiescence in the same by these Defendants.

Plaintiff also includes a grievance, reviewed on appeal by Defendant Horton. (ECF No. 1-1, PageID.15.) But Plaintiff's description of "loud music videos" and "loud conversations,"

while preventing Plaintiff from uninterrupted sleep, would not have put Defendant Horton on notice of noise so excessive or pervasive as to pose an *objectively* serious risk of hearing loss or pain so as to be "intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. Therefore, Plaintiff has not plausibly suggested Defendant Horton knowingly acquiesced in any Eighth Amendment violation. Plaintiff's vague and conclusory allegations of supervisory responsibility are simply insufficient to demonstrate that Defendants Horton and Corrigan were personally involved in the events that took place within the Marquette Unit. Therefore, the Court will dismiss Plaintiff's claim against them for excessive noise.

### C. Eighth Amendment – Medical Care

Finally, Plaintiff claims that Defendants Horton and Corrigan were deliberately indifferent to Plaintiff's serious medical condition when they refused to order URF medical personnel (not parties) to prescribe Plaintiff sleeping pills after medical staff initially refused. (ECF No. 1, PageID.8.)

In its prohibition against cruel and unusual punishments, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

Like Plaintiff's conditions of confinement claim, a claim for the deprivation of adequate medical care also has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component again requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

Here, assuming, without deciding, that sleep deprivation of the type described by Plaintiff is sufficiently serious, Plaintiff's complaint falls far short of pleading deliberate indifference. "[A] non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to the medical professionals' opinions." *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 608 (6th Cir. 2022) (internal quotation marks omitted) (quoting *McGaw v. Sevier Cnty., Tenn.*, 715 F. App'x 495, 498 (6th Cir. 2017)); *see also Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that nonmedical jail personnel are entitled to reasonably rely on the assessments made by the medical staff); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting

16

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same). Plaintiff acknowledges that Defendants Horton and Corrigan are administrative officials, not healthcare professionals. Plaintiff previously requested and was denied a prescription for sleeping pills from Health Care Unit Manager Bethany Stain (not a party) and prison medical personnel (not parties). (ECF No. 1, PageID.8.) Plaintiff was also seen by Melody Chapin, LMSW (not a party), for his noise related complaints, (ECF No. 1-1, PageID.18.). Defendants Horton and Corrigan were entitled to defer to the judgment of these medical professionals. Accordingly, Plaintiff's Eighth Amendment medical care claim against Defendants Horton and Corrigan will be dismissed.

### III.  Pending Motion

Plaintiff has also filed a motion, entitled "Motion for Process Server," asking that the Courtappoint the U.S. Marshals to "'electronically serve' all defendants plaintiff's legal papers, as an appointed process server." (ECF No. 7, PageID.42.) Because Plaintiff's complaint fails to state any claim upon which relief may be granted and will be dismissed, ordering service by the U.S. Marshal Service would not be appropriate. Accordingly, the Court will deny Plaintiff's motion.

### Conclusion

Plaintiff's motion for process server (ECF No. 7) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the

Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and a judgment consistent with this opinion will be entered.


Dated:   December 7, 2022                        /s/ Robert J. Jonker
                                                                                     Robert J. Jonker
                                                                                     United States District Judge